## In re ADOPTION OF HELM.

Circuit Court, Lake County.

June 25, 1953.

Cherry & Oldham, Leesburg, for petitioners.

Pringle & Pringle, Leesburg, for the natural parents.

T. G. FUTCH, Circuit Judge.

This proceeding involves the present and future welfare as well as the destiny of a little girl, Mary Ann Helm. She is now a few months over 4 years of age. She was placed in the custody of petitioners on June 19, 1949 when she was less than 6 months old by the Hon. W. Troy Hall, Jr., as county judge of this county, after a hearing from which he determined that she was "a dependent child within the intent and meaning of the laws of Florida." The testimony before this court in connection with these adoption proceedings leaves not the slightest doubt that Mary Ann had been sorely neglected by her natural parents prior to Judge Hall's order. There can be little doubt but that his order and the prompt medical care given her by petitioners together with their personal care and protection saved her life, and but for these intervening mercies she would now be represented on this earth only by a tiny mound of earth in some lonely graveyard, unwept and forgotten.

After keeping Mary Ann and caring for her every need and paying all expenses of and for her for more than two and a half years, petitioners filed their petition for adoption.

The evidence is conclusive that the natural parents gave little, if any thought to Mary Ann during all this time. The natural mother testified to having furnished an insignificant few items of clothing. The father testified he told petitioners he would give them some money but did not claim he actually gave or tendered so much as one cent. The natural parents have an older child whom they have farmed out most of his life.

The natural father has never been able to fit himself into any permanent niche of employment. He has drifted from pillar to post with more drift than pillar or post. The mother has three marriages and two divorces on her tally sheet. She testified she swore to false charges against the father in the county judge's court because she did not like the place where they were living.

The objection to the adoption interposed by the natural father and mother is bottomed on the strong right of the natural parents to the custody of their children, and denial of abandonment of the child.

Abandonment of a child does not mean it must be placed on a stranger's doorstep by the parents who then silently steal away into darkness and oblivion, nor that the parent or parents stand in the

public market place or on the street corner and announce to the world—"This, our child, we here and now abandon." Action and lack of action speak louder than words. In this case we have 2 years, 6 months and 26 days of complete silence and lack of action on the part of the natural parents. They stir only when the petitioners, who really care for Mary Ann, move to give her that security to which all American children have an inalienable right. *Measured by the yardstick of the rights of this little girl*, weighed down by parental neglect during the first few months of her life and so long as she remained with her natural parents, the abandonment has been complete and irrevocable. This doctrine of abandonment sprang from the savage status of the human race when a parent was privileged to demand and receive the first and last sad profit even unto sacrifice of their children to idols by tossing them to crocodiles or lions.

The decisions of our Supreme Court (much to its credit) have ever looked to the welfare of the child, and the legislature in late years has departed from the savage abandonment doctrine for "the welfare of the child."

In this case there is no possible debate as to where the welfare of Mary Ann rests. It is with the petitioners, as recommended in the very able and complete report of Mrs. Myrtle Sudderth, of the State Department of Public Welfare.

A decision in a case like this is hard for a court to make. The writer could with much more ease impose the death sentence where the law so provides than make a decision of this nature. It is no light thing to take a child from its natural parents and entrust it to other hands. I am convinced, however, that the best interests of this child will be served by granting the petition for adoption presented by the petitioners.

I am not thinking of material advantages primarily. I am thinking of certain intangible factors, chief of which are stability and home. The petitioner David Helm has had steady employment in the same place for many years, while the father as heretofore observed has never been able to carve anything like a permanent niche in the economy of the day. The mother appears never to have understood or appreciated the responsibilities, duties or requirements of motherhood. With the petitioners Mary Ann will enjoy the advantages of a steady home life, she has known no other parents save the petitioners during most of her life. She is well cared for, healthy and contented. There is no comparison between the home of the petitioners and that of the natural parents. The former is conducive to the health and happiness of the child and

appears to be permanent, the latter is of a temporary nature, rented from month to month and located in a rather undesirable section of Leesburg. The record in this case sustains the conclusions of the report of the Department of Public Welfare that the natural parents of the child are not really interested in having her restored to their custody, but are prompted to contest the adoption by outside influences. Certain it is that they devoted no attention worthy of mention to the child prior to the filing of the petition, and have shown no interest since, except by way of opposing and contesting it. They offer nothing desirable for the child's future.

For the reasons stated an appropriate order and decree will be entered granting the petition for adoption of Mary Ann Helm by David Helm and Virginia Helm in accordance with the statutes in such matters provided.